IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SYED JAFFREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 CV 1964 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Rebecca Pallmeyer |
| OFFICER FRANK R. CATAPANO JR., | ) | |
| STAR #15386, LA VERNE M. DIETCH, | ) | JURY TRIAL DEMANDED |
| CAPTAIN THOMAS SAPPANOS, STAR #68, | ) | |
| SERGEANT CHERI ADRIAN, STAR #2689, | ) | |
| OFFICER DARRYL LANGSTON, STAR #26080, | ) | |
| and OFFICER ANDRES BARREZUETA, | ) | |
| STAR#17671, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

NOW COMES the Plaintiff, SYED JAFFREY, by and through his attorneys, STITT, KLEIN, DADAY, ARETOS & GIAMPIETRO, and complaining of Defendants, CITY OF CHICAGO, OFFICER FRANK R. CATAPANO JR., #15386, in his individual capacity, LAVERNE M. DIETCH, CAPTAIN THOMAS SAPPANOS, STAR #68, in his individual capacity, SERGEANT CHERI ADRIAN, STAR #2689, in her individual capacity, OFFICER DARRYL LANGSTON, STAR #26080, in his individual capacity, and OFFICER ANDRES BARREZUETA, STAR #17671, in his individual capacity, he states as follows:

**Introduction**

1. This is a civil rights action for damages brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1988 and Illinois common law.

-1-

## Jurisdiction and Venue

2. This Court has jurisdiction of the action under 28 U.S.C. § 1331, 1343 and 1367.

3. Venue is proper as all parties are residents of the Northern District of Illinois. Further, the events giving rise to the Plaintiff's claim asserted all occurred within this judicial district.

## Parties

4. Plaintiff, SYED JAFFREY (hereinafter "Jaffrey"), is a 38 year old male, of Pakistani descent, employed by Standard Parking as a garage attendant for the 1560 N. Sandburg Terrace station.

5. Defendant, OFFICER FRANK R. CATAPANO JR., STAR #15386, (hereinafter "Officer Catapano"), is a City of Chicago Police Officer.

6. Defendant, CITY OF CHICAGO, is a municipal corporation and the employer of the Defendant Officers.

7. Defendant, LAVERNE M. DIETCH (hereinafter "Dietch") is a resident of 1560 N. Sandburg Terrace, and based upon information and belief, is or was the girlfriend of Officer Frank R. Catapano Jr.

8. Defendant, CAPTAIN THOMAS SAPPANOS, STAR #68, (hereinafter "Captain Sappanos"), is a Captain with the Chicago Police Department.

9. Defendant, SERGEANT CHERI ADRIAN, STAR #2689, (hereinafter "Sergeant Adrian"), is a Sergeant with the Chicago Police Department.

10. Defendant, OFFICER DARRYL LANGSTON, STAR #26080, (hereinafter "Officer Langston"), is a City of Chicago Police Officer.

11. Defendant, OFFICER ANDRES BARREZUETA, STAR #17671, (hereinafter "Officer Barrezueta"), is a City of Chicago Police Officer.

## Facts

12. On October 14, 2005, at approximately 8:41 p.m., surveillance video captured defendants, Officer Catapano and Dietch, entering the parking garage at 1560 N. Sandburg Terrace to retrieve Catapano's vehicle.

13. The Defendants approached Plaintiff, who was one of two parking garage attendants on duty that evening.

14. Defendants initiated an argument with Jaffrey over two days parking fees in the garage totaling about $34.50. Officer Catapano's vehicle had been parked in the garage for six days. Dietch, a building resident, had only enough coupons to pay for four days parking, and was required to pay for the remaining two days in cash.

15. Defendant, Officer Catapano, identified himself numerous times as a Chicago Police Officer and refused to pay for the remaining two days.

16. For the next ten minutes, Officer Catapano and Dietch continued to argue over the disputed charges with Jaffrey, his co-worker and other bystanders .

17. At approximately 8:51 p.m., defendant, Officer Catapano, turned around and took two steps towards his vehicle. Then, without provocation, Officer Catapano executed a 'roundhouse' style punch and struck Jaffrey in the head with a closed-handed fist. This event was captured by the surveillance camera.

18. Officer Catapano then pushed Jaffrey to the ground and continued to batter him by repeatedly kicking and punching him in the head, face, arm, hands and

stomach.

19. Officer Catapano shouted racial and ethnic slurs towards the defendant, alluding to the fact that Jaffrey was of middle-eastern descent.

20. During the incident, Officer Catapano asked defendant Dietch to retrieve handcuffs from the center console of his vehicle. She ran to his vehicle and returned to him with a pair of handcuffs.

21. The handcuffs were then put upon Syed in such a manner that he suffered abrasions which made his hands, fingers and wrists numb. Officer Catapano continued to hit Plaintiff after the cuffs were placed upon him.

22. Officer Catapano told Plaintiff that he was under arrest for assaulting a police officer and his girlfriend, Dietch.

23. Defendants Officer Langston and Officer Barrezueta arrived on the scene a few minutes later, followed by defendant Sergeant Adrian.

24. Defendants Dietch and Officer Catapano told the officers and the sergeant false and untrue information. They stated that Jaffrey had committed an assault upon them. They alleged that Plaintiff took aggressive actions and that they were in fear of being battered. Dietch and Catapano specifically stated that Jaffrey waved his finger in their faces and said, "You have to do what I say, Bitch." They stated that Officer Catapano was forced to strike Plaintiff to prevent a battery upon Dietch.

25. The responding officers and the sergeant also interviewed numerous eye witnesses. They said that Officer Catapano gave off a strong odor of alcohol and that he

unjustifiably attacked and battered Jaffrey.

26. Sergeant Adrian was shown the surveillance video of the incident by a member of the condominium association management.

27. The Defendants, Officer Langston, Officer Barrezueta, and Sergeant Adrian did not arrest Officer Catapano and Dietch.

28. Instead, they attempted to 'wash' the issue by telling Plaintiff that he should drop his allegations against Officer Catapano. They stated that if he refused to drop his allegations then the Plaintiff himself would be transported to the police station and charged with a crime.

29. Jaffrey refused to drop the allegations. The defendants then transported Jaffrey to the 018th District police station.

30. Defendant, watch commander Captain Sappanos, found that there was probable cause to detain and arrest Jaffrey despite the overwhelming evidence to the contrary. Jaffrey was charged with two counts of simple assault against defendants Dietch and Officer Catapano, and one count of resisting Officer Catapano's arrest.

31. While in custody, Jaffrey made numerous requests for medical assistance because his eye had begun to swell, his nose had begun to bleed, he bled from abrasions on his elbows and knees, and he had a persistent numbness in his left hand. Syed's requests for medical attention were ignored.

32. Following his release early the next morning, Syed received medical treatment in the emergency room of Rush North Shore Medical Center, and it was discovered

that he had suffered: a fractured nose which caused his sinuses to fill with blood, black eyes, abrasions to his knees and elbows, and numerous contusions to his bones and body.

33. Syed received follow-up medical treatment and it was discovered that he had suffered additional serious injuries. Syed was diagnosed with de Quervain's disease in his left hand, which is a painful inflamation of the tendons of the thumb, permanent nerve damage in his left hand, and a contusion to his left humerus.

34. All criminal charges against Syed were dropped on January 13, 2006, in a manner indicative of his innocence.

## COUNT I
## 42 U.S.C. § 1983 - Excessive Force vs. Officer Catapano

35. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

36. The conduct of the Defendant, Officer Catapano, alleged in the preceding paragraphs, in which he acted under the color of law and within the scope of his employment, constituted excessive force in violation of the United States Constitution.

37. The misconduct alleged was objectively unreasonable and was undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

38. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force

behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers such that its failure to do so manifests deliberate indifference.

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of excessive force can be confident that the Office of Professional Standards will not investigate those accusations in earnest and will refuse to recommend discipline even though the Office has engaged in excessive force;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionally small number of cases;

d. Municipal policy makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police

      Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding subparagraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of excessive force by police officers, thereby preventing the City of ascertaining any patterns of abuse which might develop over the course of a police officer's career;

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in a row, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed unsustained; and

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

39. As a result of the unjustified, unreasonable and excessive use of force by the Defendant, Officer Catapano, as well as the City's policy and practice, the Plaintiff has suffered pain and serious injury, as well as emotional distress.

40. The misconduct described in this Count was undertaken by the Defendant Officer within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

## COUNT II
## 42 U.S.C. § 1983 - Conspiracy vs. La Verne M. Dietch

41. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

42. Officer Catapano and Dietch reached an understanding to deprive Plaintiff of his constitutional rights.

43. Dietch was a willful participant with Officer Catapano. She retrieved the handcuffs from vehicle and gave them to him with the understanding that Plaintiff's constitutional rights prohibiting excessive force and false arrest would be violated.

44. Dietch and Officer Catapano further conspired to violate Plaintiff's constitutional rights when they gave false and untrue information to the responding officers at the scene. As a result, Plaintiff was transported to and detained at the police station. He charged with multiple misdemeanors for assaulting Officer Catapano and Dietch.

## COUNT III
## 42 U.S.C. § 1983 - False Arrest / Unlawful Detention vs. Officer Catapano, Captain Sappanos, Sergeant Adrian, Officer Langston & Officer Barrezueta

45. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

46. As described more fully in the preceding paragraphs, the Plaintiff was falsely arrested and unlawfully detained by Defendants without justification and without probable cause.

47. The Defendants actions were undertaken intentionally, with malice and with a reckless indifference to Plaintiff's rights.

48. The misconduct described in the Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in the preceding paragraphs.

49. As a result of the wrongful conduct, as well and the policy as practices of the City of Chicago, the Plaintiff has suffered physical pain and permanent injury, as well as emotional distress.

50. The misconduct described in this Count undertaken by Defendants was within the scope of their employment and under color of law such that their employer, the City of Chicago, are liable for their actions.

**COUNT IV**
**42 U.S.C. § 1983 - Denial of Medical Attention vs. Officer Catapano,**
**Captain Sappanos, Sergeant Adrian, Officer Langston & Officer Barrezueta**

51. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

52. As described more fully above, while incarcerated at the Chicago District Police Station after suffering injuries caused by Defendant Officer Catapano, the

Plaintiff's requests for medical attention were ignored by Captain Sappanos, Sergeant Adrian, Officer Langston and Officer Barrezueta.

53. Defendants wrote in the arrest report that the offender "had no cuts or bruises and advised ice if swelling occurred."

54. In this manner, the conduct of the Defendants were objectively unreasonable and deliberately indifferent to Jaffrey's objectively serious medical needs.

55. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

56. As a result of the Defendants objectively unreasonable conduct and deliberate indifference to necessary medical needs, Jaffrey suffered additional damage, including but not limited to: a fractured nose, bone contusions, de Quervain's disease, permanent nerve damage, bruises, swelling, mental distress and anguish.

57. The misconduct described in this Count undertaken by Defendants, Officer Catapano, Captain Sappanos, Sergeant Adrian, Officer Langston and Officer Barrezueta were within the scope of their employment and under color of law such that their employer, the City of Chicago, is liable for their actions.

## COUNT V
### State Law Claim - Assault and Battery vs. Officer Catapano

58. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

59. As described in the preceding paragraphs, the conduct of the Defendant, Officer Catapano, acted within the scope of his employment as a police officer, constituted

-11-

unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff's bodily injuries.

60. The misconduct described was undertaken with malice, wilfulness and reckless indifference to the rights of others.

61. The misconduct described was undertaken by the Defendant within the scope of his employment such that their employer, City of Chicago, is liable for his actions.

62. At the time of the offensive touching, Jaffrey had a reasonable apprehension that his life was in danger.

## COUNT VI
### State Law Claim - Assault and Battery vs. La Verne M. Dietch

63. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

64. As described in the preceding paragraphs, the conduct of the Defendant, Laverne M. Dietch, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff's bodily injuries.

65. The misconduct described was undertaken with malice, wilfulness and reckless indifference to the rights of others.

66. At the time of the offensive touching, Syed had a reasonable apprehension that his life was in danger.

## COUNT VII
### State Law Claim - Illinois Hate Crime Act, 720 ILCS 5/12-7.1

67. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

68. In the manner described in more detail above, Defendant, Officer Catapano, did commit an assault and battery upon the Plaintiff by reason of Plaintiff's actual or perceived ethnicity or nationality, thereby committing a hate crime as defined by Illinois Statute.

69. As a proximate result of Officer Catapano's hate crime, Plaintiff suffered damages, including serious physical injuries and emotional distress.

70. The misconduct alleged here was within the scope of Officer Catapano's employment.

71. The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### COUNT VIII
### State Law Claim - Intentional Infliction of Emotional Distress vs. LaVerne M. Dietch

72. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

73. Dietch's conduct was extreme and outrageous.

74. Dietch either intended to inflict severe emotional distress upon Plaintiff or knew that there was a high probability that her conduct would do so;

75. Dietch's conduct actually caused Plaintiff severe emotional distress.

### COUNT IX
### State Law Claim - Respondeat Superior

76. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

77. In committing the acts alleged in the preceding paragraphs, the Defendants,

   Officer Catapano and Unknown Chicago Police Officers, were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

78. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT X
### State Law Claim - Indemnification

79. Plaintiff, Syed Jaffrey, realleges each of the forgoing paragraphs as if fully stated herein.

80. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

81. The Defendants, Officer Catapano and Unknown Chicago Police Officers, are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

  WHEREFORE, Plaintiff, SYED JAFFREY, respectfully requests that this Court enter judgment in his favor and against the Defendants, CITY OF CHICAGO, OFFICER FRANK R. CATAPANO JR., STAR #15386, LAVERNE M. DIETCH, CAPTAIN THOMAS SAPPANOS, STAR #68, SERGEANT CHERI ADRIAN, STAR #2689, OFFICER DARRYL LANGSTON, STAR #26080, and OFFICER ANDRES BARREZUETA, STAR #17671, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers, in their individual capacities, and LA VERNE M. DIETCH, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

    Plaintiff, SYED JAFFREY, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                                                  Respectfully submitted,

                                                  One of Plaintiff's Attorneys

Timothy J. O'Donoghue
Christopher N. Ackeret
STITT, KLEIN, DADAY, ARETOS & GIAMPIETRO, LLC
One North LaSalle Street, Suite 1110
Chicago, IL 60602
(847) 590 - 8700